RICHARDSON, MELLIER & Co., Respondents, *v.* W. B. FARMER AND W. H. JOPES, Appellants.

*Partnership—Dormant Partner.*—In cases of a dormant partnership, while the credit is given to an ostensible partner because no other is known to the creditor, yet the creditor may also sue the secret partner when discovered, and the credit will not be presumed to have been given on the sole responsibility of the ostensible partner.

*Practice—Jeofails.*—Although a petition be defective, yet if it appear after verdict that the verdict could not have been given or the judgment rendered without proof of the matter omitted to be stated, the defect will be cured by the statute, and the judgment will not be arrested.

*Practice—New Trials—Newly Discovered Evidence.*—In a motion for new trial for the reason of newly discovered evidence, the party must show, that by the exercise of due diligence he could not have procured the evidence he failed to produce.

36 35
70a 84

36 35
87a 68

36 35
o96a 556

*Appeal from Greene Circuit Court.*

At the close of the evidence, the plaintiffs moved the court to instruct the jury as follows:

1. Each acting member of a partnership has an implied authority to execute notes in the partnership name, in payment of any article in which their trade was carried on.

2. Where two or more persons combine their property, labor, or skill, in the transaction of any lawful business for their common profit, such persons are partners.

3. That if they find for plaintiffs, the measure of damages will be the amount of notes sued on, &c.

4. The jury are directed to find for the plaintiffs.

5. A dormant partner is liable, whenever found, for goods purchased and used for the benefit of the firm, and the accepting by plaintiffs of the notes sued upon in payment for a bill of drugs purchased by W. H. Jopes of them, and the acceptance of said notes in payment therefor, if said drugs were used for the partnership of W. H. Jopes & W. B. Farmer, may not be an acceptance of the liability of Jopes alone, or an exclusive credit to him, but was binding upon all for whom Jopes acted.

The defendant Farmer then moved the court to instruct the jury:

1. That if they believe from the evidence that Wm. H. Jopes gave the notes sued on as his own individual notes, and in his own individual name, that he alone will be bound by said notes, even if the jury should also find that the goods for which the notes were given went to the benefit of both Jopes and Farmer. And if the jury believe that the notes were thus given and accepted by plaintiffs as the individual notes of Jopes alone, they will find in favor of defendant Farmer.

2. That the notes being in the name of Jopes alone, is *prima facie* evidence that they are individual notes, and not those of a partnership or firm.

3. That the burden of proof in this case rests on the plaintiffs to establish, that these notes are the contract of a firm and ought to bind them, and not the contract of Jopes alone.

4. That plaintiffs having charged the defendant Farmer with being a co-partner of Jopes, the whole burden of proof lies upon them to prove what they have asserted; and, in addition to that, to prove that Farmer was also a partner of Jopes in the transaction which gave rise to plaintiffs' cause of action.

5. That this suit is brought upon two promissory notes; and if plaintiffs recover, they must do so on these notes, and not upon a liability or contract outside and distinct from these notes.

6. That the main question in the case is, as to whether the notes sued upon are the notes of W. H. Jopes, individually, or the notes of a firm composed of Jopes & Farmer, as a firm doing business under the name and style of W. H. Jopes; and in the determination of this question, you will determine whether there was such a firm or not. If you find there was such a firm, the next question is, as to whether it was, at the time of the execution of the notes sued upon, doing business under the name of W. H. Jopes. If you find there was no such firm, or if you find that it was not doing business under that name, you will find for the defendant.

7. The court further instructs the jury, that if they believe from the evidence that Jopes gave the notes sued upon as his own individual notes, and in his own individual name, that he alone will be bound by said notes; and if the jury believe from the evidence that the notes were thus given and accepted by plaintiffs as the individual notes of Jopes alone, they will find in favor of defendant Farmer.

The court, at the instance of plaintiffs, refused the first instruction asked by defendant, to which refusal defendant excepted. The court then gave the other instructions asked by defendant. The jury then returned a verdict in favor of

plaintiffs against both defendants, upon which judgment was rendered.

The defendant Farmer then filed his motion for a new trial.

*Krum & Decker*, with *Lindenbower*, for respondents.

The only exceptions saved which can arise in this court, are upon the failure of the court to give one and the only one instruction refused for the defendant and giving plaintiffs' instructions, and the failure to sustain the motion for a new trial on the alleged ground of newly discovered evidence. Farmer, in his amended answer, denies the existtence of any partnership between himself and Jopes ; there was no other issue on the trial ; the consideration of the notes was not denied.

The evidence tended to prove that the defendants were carrying on the drug business in Springfield, Missouri, under the name of W. H. Jopes ; that Farmer was interested in the business from the start, and shared in the profits ; and that Farmer advanced in fact the working capital, and finally obtained the proceeds from the sale of these goods ; that the goods for which these notes were given, were purchased in the usual course of trade, and formed part of the stock the proceeds of which were finally received by Farmer.

*a.* The first question raised by the appellant is, whether parol evidence can be introduced to show that the name " William H. Jopes," signed to the notes, was the name of a' firm or mercantile partnership composed of the defendants. We know of no law which will prohibit parties from adopting any name as their partnership or firm name ; and for this reason it would seem strange that a plaintiff ought to be prohibited from showing that the defendants were partners, and acting under a particular name and bound by such act and name. There can be no doubt that a dormant partner is liable for partnership debts created by verbal contract ; why should he be less liable on written contracts,

executed in the name to which he has consented as the part-
nership name in written contracts ?

Although the contract was made only in the name of one
partner, and the plaintiff gave credit to only one partner,
their joint interest fixes their joint responsibility.   (1 Pars.
on Cont. 150, and cases cited.)

The cases of notes executed by the agent in his in-
dividual name are not applicable, although even in them
the tendency of modern decisions is to allow parol evidence
in an action against an unknown principal, on an obligation
professedly on its face the individual act of the agent.
Smith et al. v. Alexander, 31 Mo. 193 ; McAllister v. Budd,
33 Mo. 417 ; Bay. on Bills, 501–2, &c. ; South Carolina Bank
v. Case, 8 B. & C., 427 ; Sto. Part. &c., 139.) It being always,
however, necessary in such cases to show that the note was
given for partnership purposes.

The difficulty arises only in those cases where the partner
in whose name the business of the partnership is transacted
has also another and different business on his own responsi-
bility.   (Manuf. Bank v. Winship, 5 Pick. 11.)   In the case
at bar there was no pretence that the note was not given for
the joint benefit of both, or that Jopes had any business
separate from the firm.   A case of a liability fixed on a dor-
mant partner, very similar to the case at bar, may be found
in Stephens v. Hampton, 29 Mo. 264 ; Smith on Cont. 255 ;
Beckham v. Brake, 9 Mees. & W. 79 ; Winship v. Bank U. S.,
5 Pet. 530 ; Sheehy v. Mandeville, 6 Cranch, 254.)

*b.* The court committed no error in overruling the motion
for a new trial, based on the alleged newly discovered evi-
dence.

I. The grounds upon which this motion rests are no longer
open to doubt.   New evidence is so easily manufactured, *ex
parte* affidavits so readily obtained, that courts have guarded
with the utmost vigilance the attempts to re-open the gates
of litigation where they have been once closed by a verdict.
Parties are required to use the utmost diligence to prepare
their case and evidence made for trial ; and the least neglect

chargeable to them is fatal to a new application. What are the requirements and conditions upon which a new trial may be obtained on account of new evidence? In the case of Berry v. State, 10 Geo. R. 511, the rules are aptly stated by the celebrated Justice Lumpkin, and they have been adopted in 3 Grah. & Wat. 1021–2, and also by this court in the case of State v. McLaughlin, 27 Mo. 111, as follows:

The applicant must show:

1. That the evidence has come to his knowledge since the trial.

2. That it was not owing to the want of due diligence that it did not come sooner.

3. That it is so material that it would probably produce a different result if the new trial were granted.

4. That it is not cumulative.

5. That the affidavit of the witness himself should be produced or his absence accounted for.

6. That the object of the testimony is not merely to impeach the character or credit of a witness. (Warren v. Ritter, 11 Mo. 354; Boggs v. Lynch, 22 Mo. 565; 3 Grah. & W., New Trials, 1065; Caldwell v. Dickson, 29 Mo. 228.)

It is not sufficient for a party to show that he did not know of the evidence, but he must make it appear that he could not have discovered it by using diligence. (Knox v. Work, 2 Binn. 582; Coe v. Given, 1 Blackf., Ind., 367.) Even in criminal cases this is the rule. (Laveille v. Harrison, 30 Mo. 228; Garner v. Le Beau, 30 Mo. 229.)

The respondents have not only, during the pendency of this appeal, lost the use of the money to which they were entitled, but have been put to the cost and expense of the employment of counsel to prosecute their claim in this court upon a record which does not even show the shadow of error—but does show that the powers of law have been vexatiously abused by the appellants for the mere purpose of delay. Unless the Supreme Court will frown upon these sham appeals by assessing damages, (which after all is no more than the money is actually worth,) parties for mere

delay will, and do, find it profitable to appeal upon the most frivolous grounds.

*Sherwood & Young, Ewing & Muir,* for appellants.

I. The first, fourth and fifth instructions given for plaintiffs are erroneous.

II. The first instruction asked on behalf of Farmer should have been given. (Sto. Part. § 134; Sylvester v. Smith, 9 Mass. 115; Loray, Beard & Co. v. Johnson, 2 Pet. 186; Loyd et al. v. Freshfield et al., 2 Carr. & Payne, 325.)

III. The instructions given are inconsistent and contradictory, and were calculated to mislead the jury.

IV. The motion for a new trial should have been sustained. It showed a good defence, the exercise of all diligence, and a manifest surprise on the part of appellant.

The motion, and the affidavit in support of it, are in all respects sufficient. (2 R. C. 1855, p. 1285, § 2 & 3; 27 Mo. 111; 22 Mo. 563; 15 Mo. 319–20.)

The petition is defective in not averring the existence of any partnership between Jopes and Farmer.

WAGNER, Judge, delivered the opinion of the court.

This was an action brought in the Greene county Circuit Court, by the respondents against the appellants. The petition is founded on two notes, and contains two counts. In the title to the cause, Jopes and Farmer are declared to be partners in trade, doing business under the firm name of W. H. Jopes. The first count then avers that defendants executed the note in their firm name, in payment for a bill of drugs and medicines bought by them of plaintiffs and used in their business. The second count is the same as the first, except that it is alleged, that the defendants executed the note sued on in their firm name of W. H. Jopes.

Jopes did not appear to the action. Farmer filed his answer denying the existence of the partnership under the name and style of W. H. Jopes, or under any other name or style, and averring that the notes sued on were the separate

and individual notes of the said Jopes, and executed for his sole use and benefit. A jury was empannelled to try the issue, and at the instance of the plaintiffs the court gave several instructions, the fifth and last of which is as follows:

"A dormant partner is liable, whenever found, for goods purchased and used for the benefit of the firm, and the accepting by plaintiffs of the notes sued upon in payment for a bill of drugs purchased by W. H. Jopes of them, and the acceptance of said note in payment therefor, if said drugs were used for the partnership benefit of W. H. Jopes and W. B. Farmer, may not be an acceptance of the liability of W. H. Jopes alone, or an exclusive credit to him, but was binding upon all for whom W. H. Jopes acted." To the giving of all of said instructions the defendants at the time excepted.

Defendants then asked the court to give several instructions in their behalf, all of which were given except the first; and to the decision of the court in refusing to give said first instruction they also excepted.

The jury found a verdict for plaintiffs, and defendants made their motion in arrest of judgment and also a motion for a new trial, both of which motions were overruled by the court and defendants duly excepted, and Farmer now prosecutes his appeal in this court.

1. The instructions given for the plaintiffs below, respondents here, taken together, fairly presented the law to the jury; the first instruction asked by defendants, which the court refused, whilst enumerating a correct abstract principle of law, is not applicable to this case; the other instructions prayed for, and which were given, were of the most favorable character. The great mistake made in the line of argument pursued by the appellants' counsel is not paying proper regard to the obvious distinction between partnerships, where all the members are open and notorious, and those where some are silent or dormant. Parties have a right to make their own contracts to assume extraordinary liabilities, or to take inferior securities when they might have

insisted on greater ones.   When they are fully cognizant of all the facts, and a specific credit given, or a personal liability incurred, the law will not attempt to interfere and set up a new agreement for them, but will leave them to abide by their own engagement.   The maxim *modus et conventio vincunt legem* then fitly applies.

The case of Sylvester v. Smith, 9 Mass. 115, merely decides that where an agreement was entered into between two persons, one to find the stock and the other to do the labor, and the profits were to be divided among them equally, an action might be maintained against the person buying the stock, notwithstanding the other person who was to perform the labor was not joined with him ; Judge Parker saying, that, " notwithstanding a co-partnership, either of the co-partners may undoubtedly contract on his own account, and make himself liable for merchandise bought for the co-partnership account, if the vendor chooses to accept him.   In Loyd v. Freshfield, 2 Carr. & Payne, 325, Abbott, Ch. J., held, that if money be lent to one partner on his individual credit, the fact that it is applied in discharge of the liabilities of the firm will not enable the lender to sue the firm for its repayment.   In Le Roy v. Johnson, 2 Peters, 186, Hoffman and Johnson were co-partners in trade ; a bill of exchange was drawn by Hoffman after the dissolution of his partnership with Johnson, and the proceeds of the bill went to pay and did pay the partnership debts of Hoffman and Johnson, which Hoffman on the dissolution of the firm had assumed to pay ; it was decided by the court that the holder of the bill, after its dishonor, could have no claim on Johnson in consequence of the particular appropriation of the proceeds of the bill.   It was admitted that if one partner contract with a third person in the name of the firm after the dissolution, but the fact of such dissolution not being made public or known to such third person, the law would consider the contract as being made with the firm and on their credit.   But when the partner made an agreement or entered into a contract with another in his individual name,

and upon his sole personal responsibility, it was of no importance for the other to know that the partnership was dissolved; because he was dealing, not with the firm and upon their credit, but with the individual with whom he was acting, upon his own credit.

It will be perceived that in all the foregoing cases the partnerships were known; their existence brought home to the knowledge of the parties dealing with them. They were placed in a situation to exercise their right of election, and were unquestionably bound by their own deliberate acts. They were not deprived of the right of choosing their debtors, and there is no hardship or injustice in holding them to their choice. But in the case of a dormant or secret partner, while the credit is manifestly given to the ostensible partner because no other is known to the party, yet the credit is not deemed to be exclusive, the creditor having had no opportunity to elect or choose his debtor.

The credit will not, therefore, be presumed to have been given on the sole and separate responsibility of the ostensible partner, but will bind all for whom the partner acts, if done in their business and for their benefit. (Sto. on Part., § 138; 1 Sto. on Cont., § 226; Thompson v. Davenport, 9 Barn. & Co. 78; Bracken v. March, 4 Mo. 74; Raimond v. C. & E. Mills 2 Metc. 319; Bank v. Birney, 5 Mason, 176; Winship v. Bank U. S., 5 Pet. 529.)

2. The motion in arrest of judgment brings up the question of the legal sufficiency of the petition. It is contended by the appellants' counsel that the petition is fatally defective, because there is no express averment that Farmer and Jopes were co-partners, and as such executed the notes by the name and style, &c., of W. H. Jopes. In the title the partnership is well set out, but in the body of the petition it is only charged that they made and executed the notes sued on in their firm name, and we have now to decide whether this defective and insufficient allegation is cured by verdict. The rule in reference to this subject is believed to be well settled, but the authorities differ in its application.

In Stephens v. Frampton, no partnership was alleged in the petition; the defendant answered denying the partnership and also the execution of the note; the court below having found for the plaintiff, this court affirmed the judgment, saying that the defendant was not aggrieved by the omission. (29 Mo. 263.)

It is said in the court of King's Bench: "Where matter is so essentially necessary to be proved, that, had it not been given in evidence, the jury could not have given such a verdict, then the want of stating that matter in express terms in a declaration, provided it contains terms sufficiently general to comprehend it in fair and reasonable intendment, will be cured by a verdict; and where a general allegation must, in fair construction, so far require to be restricted, that no judge and no jury could have properly treated it in an unrestrained sense, it may reasonably be presumed, after verdict, that it was so restrained at the trial." And Mr. Sergeant Williams says: "Where there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been a fatal objection upon demurrer, yet if the issue joined be such as necessarily required on the trial proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict." And this rule has been well established and followed by our own adjudications. (Jackson v. Pesker, 1 M. & S. 234; 1 Saund. 228, n. 1; Frost v. Pryor, 7 Mo. 314; Palmer v. Hunter, 8 Mo. 512; Shaler v. Van Wormer, 33 Mo. 386; Addington v. Allen, 11 Wend. 374; Grey v. James, 1 Pet. C. C. 476; Bayard v. Malcolm, 2 Johns. 550; 2 R. C. 1855, p. 1255, § 19.)

And now in the case here, though the petition was obviously defective, the whole matter was submitted to the jury under proper instructions from the court; without proof of partnership they could not have found their verdicts; they

were the rightful triers of the fact, and we do not feel disposed to disturb their findings.

3. The appellant, in his motion for a new trial, states that since the trial he had discovered new testimony materially affecting his rights, and tending to diminish the amount, which respondent ought to recover, several hundred dollars. In support of this motion, he made an affidavit stating in substance that at the time of the execution of the notes sued on, W. H. Jopes was indebted to respondents in the sum of $1,841.42, and that being so indebted he gave his notes for that sum, but by mistake at that time gave his other note for half that sum, to-wit, $920.72; that he was never advised of the mistake, and could not discover it by any possible diligence, and never discovered it till after the trial had ended. To further support this, Jopes, who was also called as a witness, made his affidavit corroborating the statement of the appellant Farmer, and alleging that he was totally ignorant of his being sued on two notes till he was called on the witness stand. Does this application disclose such facts as will entitle a party to a new trial? Is the requisite diligence here exhibited? The partners were joint defendants and sued as co-partners; they were regularly served with process; they had ample time, and it was their business to consult together and advise each other of every thing that was necessary and essential in their defence.

When a person receives notice of trial, he is at once put on enquiry. The period of notice is always sufficiently ahead of the sitting of the court, to afford parties full opportunity to ascertain the precise situation of their cause, and what testimony they will require on their trial. And courts will not aid parties where they have failed to take the requisite steps to procure their evidence, and more especially where they have been guilty of unpardonable neglect. Before they ask the courts to help them, they must have evinced a disposition to help themselves.

To interpose in this case and grant a new trial, would be setting a precedent that would unsettle well established prin-

ciples, lead to great abuse and interminable litigation. If a hardship in this case is worked to the parties, it is justly imputable to their own laches.

We see no error in the court in overruling the motion. The judgment is affirmed. The other judges concur.