BANKERS MORTGAGE COMPANY, APPELLANT, V. ROSIE E. OSBORN ET AL., RESPONDENTS.

Kansas City Court of Appeals.   January 27, 1930.

*Beardsley & Beardsley* for appellant.

*Burns & White, E. M. Metcalf, Arthur N. Adams, Eaton Adams,* and *Arthur N. Adams, Jr.,* for respondents.

BLAND, J.—This is an action to foreclose a deed of trust. The case was tried as a suit in equity and we will so treat it in this appeal.

The facts of record are that plaintiff is a corporation, duly organized and existing under the laws of Missouri, having its principal place of business at Kansas City, Missouri. Defendants are, or were, residents of Kansas City, Missouri. On February 1, 1925, defendants Rosie E. Osborn and Ulysses G. Osborn executed their certain promissory note, due February 1, 1930, to plaintiff Bankers Mortgage Company, or order, in the principal sum of $12,000, "with interest from date at the rate of six per cent per annum until default or maturity, and at the rate of eight per cent per annum after

default or maturity, payable semi-annually both before and after maturity on the first days of August and February in each year."

The deed of trust conveyed all the interest of the said Osborns in Lot 48, corrected plat of Troost Avenue Heights, an addition to Kansas City, Missouri. At the same time the makers of said note executed ten interest coupon notes of $360 each, attached to said principal note, payable to the Bankers Mortgage Company or order, and recited—"for interest due on that date upon and according to the tenure and effect of a principal note of $12,000, of even date herewith."

On March 11, 1925, plaintiff sold the $12,000 note and deed of trust securing the same to one Terrence Dolan, otherwise known as T. Dolan, together with all the interest coupons thereto attached. When each of the semi-annual interest coupon notes became due on the first four interest coupons, Dolan detached and presented them at the office of the Bankers Mortgage Company, where they were made payable, as was also the principal note, and received from said company the various amounts due thereon. On June 17, 1927, defendant David B. Smith purchased the property under a foreclosure sale of a junior mortgage.

On July 11, 1927, plaintiff instituted a proceeding against the Osborns, J. R. Smith and David B. Smith to foreclose the deed of trust above described, for default of interest coupon notes numbered from 1 to 4, inclusive, and for certain money paid for insurance. On June 7, 1928, the deed of trust was released of record. On February 19, 1929, a judgment was rendered in favor of plaintiff and foreclosing said deed of trust. Timely separate motions for a new trial were filed by defendants J. R. and David B. Smith, said motions among other things being based upon the charge:

"Because the judgment and finding of the court is contrary to the weight of the evidence."

May 20, 1929, the said motions were sustained by the court without assigning any reason therefor, and an order was entered accordingly. From this order, plaintiff has appealed.

The testimony shows that on March 11, 1925, the Bankers Mortgage Company indorsed the principal note and each of ten coupons, as follows: "Pay to the order of ———— without recourse, by F. E. House, Vice President," and delivered same to Terrence Dolan, the purchaser thereof, for value. It appears that some interest already had accrued on coupon No. 1, and while it was delivered to Dolan, together with the other coupons and the principal note and deed of trust, when coupon No. 1 matured, the Mortgage Company gave Dolan a check for $280, and took up the coupon which was for $360, Dolan not having purchased the interest which had accrued thereon at the date of the purchase by him of the principal note and deed of trust.

When coupons 2, 3 and 4 matured, in each instance, the Bankers Mortgage Company gave Dolan a check for $360, and took over or retained the coupons in the same condition, as to indorsement, as when delivered to him, and they were held in the same condition by the Bankers Mortgage Company and were so produced and put in evidence. The testimony shows that on May 10, 1927, J. R. Smith bought the principal note and the remaining coupons numbered 6 to 10 inclusive. This defendant, in answer, alleged his said purchase from Dolan of the principal note and interest coupons 6 to 10 inclusive, thereto attached; that plaintiff had represented to Dolan and to him that the first four coupons were paid fully by the makers; that they had, in fact, been paid; that he bought the principal note and coupons depending upon the truth of these representations; that plaintiff is estopped on that account from having its foreclosure, and that it has waived its rights thereto.

Defendant David B. Smith pleaded he was the owner of the land described in the deed of trust sought to be foreclosed, having bought same at a foreclosure sale under a junior mortgage; that plaintiff company represented to Dolan, J. R. Smith and himself, that the four coupon notes had been paid and cancelled; that the said notes and insurance premiums had, in fact, been paid; that plaintiff had waived its right to foreclosure and was estopped to claim such right.

The deed of trust, in evidence, provides if default be made in the payment of either principal or interest, or any part thereof, or of any sums due, the owner of said note or notes for advances under the deed of trust, or if said grantors shall fail to perform any obligation, covenant or agreement provided for in said deed of trust, including the interest payments, then, at the option of the holder of any part of said mortgage debt, or for any advances made thereunder, the same shall become due and payable; that upon such default the holder of such mortgage debt, or any part thereof, might proceed to foreclosure. The deed of trust further expressly authorizes the holder of said mortgage debt, or any portion thereof, to purchase or pay off any prior adverse liens or incumbrances or the interest thereon falling due or becoming a lien thereon; and further authorizing the holder of said mortgage debt, or any portion thereof, in every way to protect the title and possession of said premises, and that said grantors, their successors and assigns, expressly agree to reimburse said beneficiary for any and all sums so expended; that the said deed of trust further provides the grantors agree to keep all of the buildings and improvements in as good condition as they were, and to maintain fire and tornado insurance thereon, the same to be payable to the beneficiary under said mortgage indebtedness; that upon demand the makers, their successors and assigns shall repay in full the advancements which may be made under said

terms and provisions; and that the said deed of trust shall be a further lien for the payment thereof.

The petition is in five counts, the first four of which refer to the unpaid interest coupon notes, and the fifth alleges payment of insurance on the property; judgment is asked on each count for the sum therein alleged to be due, with interest, and asks foreclosure of the said deed of trust and for judgment directing the sale of the property to satisfy the debt of plaintiff; and for such other and additional relief as plaintiff may be entitled to receive both at law and in equity. The answers of defendants J. R. and David B. Smith were as above indicated. Defendants Rosie E. Osborn and Ulysses G. Osborn made neither answer nor appearance.

The cause was heard by the court sitting as a chancellor. As above stated the judgment was for plaintiff on each count of the petition and against all the defendants; the appeal is from the order of the court granting defendants J. R. and David B. Smith a new trial.

There are five assignments of error presented by plaintiff which are attempted to be sustained under six headings under points and authorities, which attempt to show plaintiff was entitled under the facts to the judgment rendered. However, as the appeal is from the ruling of the court sustaining the motion for a new trial as to the defendants Smith, we need not pass upon all these points for reasons which will hereinafter appear.

As already stated, the trial court sustained the motion for a new trial without assigning any reason for such ruling. It is the well-established law that rulings on motions for a new trial are within the discretion of the trial court. The general rule in this respect is stated in 4 C. J., Sec. 2813, p. 830, as follows:

"It is generally held that motions for a new trial are addressed to the discretion of the trial court and are not reviewable unless the record shows a clear abuse of such discretion . . ."

And this rule is followed in the case of Pearce v. Rogers, 15 S. W. (2d) 874. It is further the rule that where the trial court has granted a new trial, the appellate court will look at the matter with even less scrutiny that if a new trial had been refused. Greater latitude is allowed the trial court in granting than in refusing new trials, and the appellate court will interfere more reluctantly where the new trial is granted than where it is denied, since in such cases the rights of the parties are not finally settled as they are where a new trial is refused. (Authorities supra.) It has been held that where a motion for a new trial has been sustained with no reason for the ruling given by the court, and one of the points made by the motion, as here, is that the verdict is against the weight of the evidence, the appellate court will not disturb the ruling unless there is no substantial evidence to justify a result contrary to the ver-

dict, or unless the evidence of the party obtaining the new trial conclusively shows that no verdict in his favor could be allowed to stand. [Story v. August, 10 S. W. (2d) 965; Bell v. Bell, 20 S. W. (2d) 289; Petrilli v. Swift & Co., 216 Mo. App. 626, 260 S. W. 517.]

We are therefore confronted with a situation wherein the new trial was granted without any reason therefor being specified by the court, and one ground set forth in the motion for a new trial was that the verdict was against the weight of the evidence. We are not authorized to interfere with the discretion exercised by the trial court in granting a new trial supposedly upon this ground unless, as is suggested by plaintiff, it conclusively appears from the undisputed facts in the case that no verdict for defendants ever could be upheld. There is a clear issue presented here as to whether the interest coupons held by plaintiff had been paid. If the coupons in issue had previously been paid, a judgment for defendants could be sustained. As is required of us in equity cases, we have read all the evidence produced, and find there is substantial evidence to sustain the issues on both sides of this question.

David B. Smith testified as follows:

"Mr. Kirshner said he was negotiating loans with Osborn to take up these coupons or already had negotiated them. He said Osborn had plenty of money to take care of them. Mr. Kirshner didn't say the Bankers Mortgage Company owned these coupons. He said Osborn had assets there to take care of them."

And J. R. Smith testified, in part, as follows:

"I remember when I bought this deed of trust from Osborn, May 10, 1927, paying $12,200 with my check, Exhibit C. At the time I bought it, the first four coupons were not attached to the note. I made inquiry of Osborn as to whether or not they had been paid several times before I bought them and I talked to Mr. Kirshner about the coupons. He was in my office two or three times. I asked him if he knew whether the interest on the first mortgage had been paid and he said 'Yes. We have paid that and charged it to Osborn.' He told me that in my office and he told me if I would come over to his office, he would show me the coupons. A short time after that, I was passing his office, and stopped in and he said, 'I will show you those coupons,' and he reached up in his desk and got them and said, 'When we finish our settlement with Osborn, I will turn them back to him.' "

Mr. C. H. Kirshner, president of plaintiff company, flatly refutes the testimony of the Smiths. The issue is clear cut and the evidence flatly contradictory. We are entitled to know upon what ground the trial court granted the new trial. Plaintiff states in its reply brief:

"It is argued in respondents' supplemental brief that the matter of granting a motion for new trial was discretionary with the trial

court, and that this court will not review the action of the trial court in that regard.

"All the cases cited in respondents' brief under this heading are actions at law where this court's attitude toward questions of fact is entirely different from what it is in an equity case."

Plaintiff insists that even in an action at law our appellate courts recognize there are times and circumstances under which the action of the trial court in granting a new trial should be overruled in cases where questions of fact are involved. Citing Adam Roth Groc. Co. v. Hotel Co., 183 Mo. App. 429, 166 S. W. 1125; and Riley v. Citizens Bank, 220 Mo. App. 963, 969, 272 S. W. 711, where we said:

"There can be no question but that this court not only has the right, but it is its duty in equity cases, to review the evidence, findings of fact and conclusions of law of the referee and the trial court, and to render such judgment as, in its opinion shall conform to the law and the evidence." (Citing authorities.) [See also Krug v. Bremer, 316 Mo. 891, 292 S. W. 702; Smith v. Nicholson, 289 S. W. 349; State ex rel. v. Trimble, 289 S. W. (Mo.) 922.] However in the Riley case, we further held (l. c. 969):

"As stated above, we have carefully reviewed all the testimony in the case, most of which is not applicable to the land transaction, and while we are not bound by the findings of the referee, it is the rule that his report is entitled to much weight in reaching our decision in the matter because the referee saw the witnesses, heard their testimony and observed their general demeanor on the stand, and was better able to weigh their testimony than are we."

For the reasons above stated we are not authorized to disturb the ruling of the trial court on the motion for a new trial. The order granting a new trial is therefore affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.